# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Virginia

FILED
FEB 13 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched or identify the person by name and address)* <br> (1) Apple cellular phone, model X IMEI #354841094054631 with Sprint SIM Card (See Attachment A for full identifiers) | ) ) ) Case No. 3:19SW057 ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Eastern___ District of ___Virginia___ *(identify the person or describe property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18/21__ U.S.C. § __922(a)/841(a)__, and the application is based on these facts: See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Thomas W. Byrd Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __02/13/2019__

/S/
David J. Novak
United States Magistrate Judge
*Judge's signature*

City and state: Richmond, VA

Hon. David J. Novak, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) Apple cellular phone, model X IMEI #354841094054631 with Sprint SIM Card #8901120300001873294. Currently located at the ATF Richmond III Field Office, 600 E. Main Street suite 1401, Richmond, Virginia. | Case No. 3:19sw057 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Thomas W. Byrd being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

1. I, Thomas Wayne Byrd have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, and Firearms (ATF) since July 2015 and I am currently assigned to the Richmond III field office. I have investigated individuals for the illegal possession and use of firearms, firearms trafficking, illegal possession and distribution of controlled substances, and for committing violent crimes. As a SA with ATF I am primarily responsible for conducting criminal investigations that concern the enforcement of our nation's federal firearm laws, drug trafficking and violent crimes.

1

This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

2. The property to be searched is (1) Apple cellular phone, model X IMEI #354841094054631 with Sprint SIM Card #89011203000001873294 collectively referred to as "SUBJECT DEVICE." SUBJECT DEVICE are currently located at the ATF Richmond III Field Office, 600 E. Main Street suite 1401, Richmond, Virginia.

3. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

### RELEVANT STATUTORY PROVISIONS

**False Statement as to Materially False Statement to Purchase a Firearm:** 18 U.S.C. § 922 (a)(6) provides that it is a crime to provide a false statement to a Federal Firearms Licensee during the purchase of firearm(s).

**Conspiracy to Make a Materially False Statement to Purchase a Firearm:** 18 U.S.C. § 371 provides that it is a crime for two or more persons to conspire to Make a False Statement as to Material Fact to a Federal Firearms Licensee.

**Possession with Intent to Distribute Marijuana:** 21 U.S.C. § 841(a)(1) provides that it is a crime to possess with intent to distribute a controlled substance

## TECHNICAL TERMS

4.  Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras

also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. **Portable media player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

 f. **Sim Card**: A Subscriber Identity Module card is a smart card that includes but not limited to a cellphone phone number, customer identity and other data.

 g. **SD Card**: A Secure Digital Memory Card Memory is a storage device utilized in computers and/or cellular phones for additional cellular phone storage components/files compatible that frequently contain files that include but not limited to: cellular phone downloads, photos and videos.

5. Based on my training, experience, and research, I know the SUBJECT DEVICE have capabilities that include, but are not limited to: a wireless telephone; a digital camera/video recorder; a portable music/media player; and a device to send/receive emails, documents, photographs, videos and text messages. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence of drug/firearm trafficking, possession and indicia of ownership to SUBJECT DEVICE.

## PROBABLE CAUSE

6. A. On January 20, 2018, at a gun show located at 6807 Midlothian Turnpike in Richmond, Virginia, officers of the Richmond Police Department (RPD) and the Virginia State Police (VSP) were approached by employee(s) of Dominion Defense, a federal firearm licensee (FFL), about the theft of a firearm. The employee(s) provided a general description of the three subjects believed to be involved in the theft of a Glock model 27 pistol with serial number SGA135.

7. RPD came into contact with two of the subjects matching the general descriptions provided by the employee. The subjects were identified as Jawuan HOUSE and Yamin MAXEY.

HOUSE explained to officers that he purchased a "DRACO" firearm and MAXEY had purchased two firearms, a Glock 27 and a Glock 30. HOUSE told officers that he had driven to the gun show with some of his friends in a white Lexus with VA registration XBN-8209. HOUSE provided a photograph of the person he believed had stolen the firearm and described that person's car as a silver Infiniti.

8. Officers located the car described by HOUSE and escorted him to the white Lexus in the parking lot of the gun show. HOUSE told the officers that multiple firearms and marijuana were inside the car.

9. After conducting a search of the vehicle, law enforcement officers seized the following items: a Draco 7.62 caliber pistol SN#RAS47P000473, Glock model 27 .40 caliber pistol SN#LNC335, Glock model 30 .45 caliber pistol SN#DYK931, Glock model 27 .40 caliber pistol SN#MTB947 and two mason style glass jars containing a green leafy substance (believed to be marijuana). HOUSE claimed ownership of the marijuana. Officers also recovered with the marijuana digital scales.

10. On April 20, 2018, SA Byrd and SA Bonzano interviewed MAXEY concerning his firearms purchases at the January 20, 2018 gun show. MAXEY stated that on the day of the gun show, HOUSE and Brian SAMUELS picked him up to drive him to purchase firearms. MAXEY explained that prior to the gun show, HOUSE had asked him to purchase guns on HOUSE's behalf. MAXEY stated that HOUSE wanted to avoid suspicion from purchasing too many firearms at one time. HOUSE had given money to MAXEY to buy the firearms and as they shopped around the gun show, HOUSE instructed MAXEY about which firearms to purchase. MAXEY admitted that the two firearms he purchased, a Glock model 27 .40 caliber pistol bearing serial number LNC335 and a Glock model 30 .45 caliber pistol bearing serial number B7733US from Dominion Defense,

were for HOUSE. On the ATF Form 4473 for this transaction, MAXEY falsely stated that he was the actual purchaser of the firearm, when, in fact, he was purchasing the firearms for HOUSE.

11. In August of 2018, a cooperating source ("CI-1") reported to the Henrico County Police Department (HCPD) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) that Brian SAMUELS was involved in the trafficking of firearms.

12. CI-1 will be referred to in the masculine gender, regardless of CI-1's true gender. CI-1 has been convicted of two felonies, including robbery and the use of a firearm in the commission of a felony. He was arrested in December of 2017, in Henrico County, Virginia, for possession with intent to distribute a schedule I or II drug (two charges), possession of weapon/ammo by a felon, and possession of a firearm by a convicted felon. CI-1 is currently supervised through the use of an ankle monitor. On January 29, 2019, ATF SAs were notified by the Henrico County Police Department that CI-1 had failed a drug test for marijuana usage.

13. CI-1 has provided reliable information in this case which has led to multiple operations involving CI-1 and an undercover ATF Special Agent (UC). This includes controlled purchases of 36 firearms from SAMUELS, which included at least one other co-conspirator to effectuate one of those controlled purchases. Those operations have led to the charging and arrest of multiple individuals in federal and state investigations related to the suspected firearms trafficking organization involving SAMUELS and HOUSE.

14. HOUSE, SAMUELS and CI-1 are documented Black Gangster Disciples gang members and communications of the ongoing criminal conspiracy to traffic firearms and/or illegal narcotics are suspected to be contained within SUBJECT DEVICE. Also contained within SUBJECT DEVICE, based on the interview of MAXEY, ATF suspects communications between

MAXEY and HOUSE occurred prior to and after the criminal conspiracy to make a false statement to an FFL and/or with other members of the BGD.

15. CI-1 has reported to ATF and HCPD that HOUSE is a known distributor of marijuana. This is consistent with the recovery of a distributable amount of marijuana and other indicia of an intent to distribute marijuana in January 2018.

16. On February 7, 2019, law enforcement arrested HOUSE, a documented gang member of BGD, in the investigation for federal firearms trafficking violations. Pursuant to the arrest of HOUSE, HOUSE had a cellular device on his person. HOUSE further admitted to SA Byrd that the cellular device on his person was his property. The arrest of HOUSE was contemporaneous to the execution of a search warrant and arrests involving other defendants in this investigation into federal firearms trafficking violations and state violations for gang participation. Shortly after the arrest of HOUSE, SA Byrd observed notifications to HOUSE's cellular device indicating two messages were received, one of which included a photograph of a gun emoji appearing on the locked screen. SA Byrd suspected these messages were contents concerning the criminal investigation involving other members of the criminal investigation.

17. In my training and experience, I know that drug and firearm traffickers frequently use cellphones to set up illegal transactions, store the contact information for buyers and suppliers, store balance sheets to keep track of drug trafficking activities, communicate with other known drug traffickers or customers to discuss illegal transactions, and send or store images documenting firearm and/or drug possession.

18. SUBJECT DEVICE is currently in secured storage at the ATF Richmond Field Office, 600 E. Main Street, Richmond, Virginia. In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which their contents are, to the extent material

to this investigation, in substantially the same state as they were in when the SUBJECT DEVICE first came into the possession of the ATF

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training and experience I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE were used, the purpose of its use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

9

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT DEVICE to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine SUBJECT DEVICE already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night. Moreover, the Government will file a written pleading in this case within one hundred twenty (120) days after the execution of the search warrant notifying the court that the imaging process of digital evidence

10

seized from the target location is complete, and the forensic analysis of computers and media has begun. Such notice will include confirmation that written notice has been provided to the defendant or his counsel informing the defendant that the forensic examination of evidence seized from him has actually begun. Such notice to the defendant and the Court is not intended to mean, and should not be construed to mean, that the forensic analysis is complete, or that a written report detailing the results of the examination to date will be filed with the Court or provided to the defendant or his counsel. This notice does not create, and is not meant to create, additional discovery rights for the defendant. Rather, the sole purpose of this notice is to notify the defendant that, beyond the simple seizure of his property, a forensic search of that property has actually begun.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Thomas W. Byrd
Special Agent
ATF

Subscribed and sworn to before me on February 13 2019

/S/
David J. Novak
UNITED STATES MAGISTRATE JUDGE

11

## **ATTACHMENT A**

The property to be searched is SUBJECT DEVICE (1) Apple cellular phone, model X IMEI #354841094054631 with Sprint SIM Card #89011203000001873294. Currently located at the ATF Richmond III Field Office, 600 E. Main Street suite 1401, Richmond, Virginia.

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the SUBJECT DEVICE described in Attachment A that relate to violation of 18 U.S.C. § 922(a)(6); 18 U.S.C. § 371; and 21 U.S.C. § 841 (a) (1), including but not limited to:

   a. SUBJECT DEVICE user accounts/basic demographic information;

   b. contact lists;

   c. call records;

   d. call history;

   e. any information related to the purchase, possession or trafficking of firearms and/or ammunition;

   f. any information related to drug transactions, possession and drug trafficking;

   g. photographs/videos/documentation;

   h. text messages, emails, multimedia messages;

   i. web browser history;

   j. Balance sheets;

   k. Tower data;

   l. All data and contents of the SUBJECT DEVICE.

2. Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.